Case number 21-1071, Lisa Milice petitioner versus Consumer Product Safety Commission. Mr. McClain for the petitioner, Ms. Dixon for the respondent, Mr. Fee, and Mr. Scurrier for the American Society for Testing and Materials. Good morning, your honors. May I please report? Good morning, counsel. You may proceed. Good morning. I'm Jared McClain with the New Civil Liberties Alliance on behalf of Lisa Milice, the petitioner in this case. As an expectant mother, Lisa Milice tried to see the binding standards that govern the safety of the products that she was looking to buy for her child's nursery. But the Consumer Product Safety Commission, the agency tasked with assisting consumers and evaluating risk, only makes two copies of those safety standards available, both of which it keeps near its office in Bethesda, Maryland. And even for those citizens fortunate enough to be able to travel to Bethesda, Maryland, they are expected to memorize these intricate and technical safety standards because the commission forbids photocopying and otherwise disseminating the law. So, counsel, would you address the jurisdictional issues? Yeah, I'd be happy to, your honor. Since it's jurisdictional, we should start with the statute and both the CPSA and the APA treat the terms promulgate and publication as the same terms. I think ASTM's letter suggests that the terms are synonymous, except promulgate means the agency's formal proclamation that a rule is final and will take effect. It's the final agency action that's consummated through the rulemaking process. That's the rule from Bennett v. Speer. A rule cannot be final for review until an agency has consummated the decision-making process. It must not be a merely tentative or interlocutory nature. It must determine rights or obligations or trigger legal consequences. And what the agency did here was use a direct final rule process rather than a formal notice of comment with a separate publication of a final rule. So, are you addressing statutory timeliness? Yeah, so under 2060A, an interested person, a consumer has 60 days to petition from the date of promulgation. And our argument, your honor, is that there was no final agency action. There was no promulgation in this case until the effective date. And I know that's not typically the rule, but this isn't a typical promulgation. This was a direct final rule. And what the agency said in its direct final rule was that the agency was proposing a rule and providing an opportunity for comment. And if one of those comments were adverse, the agency would pull the rule because direct final rulemaking is typically used for uncontroversial rules. And in the event that the- Let me just be clear, counsel. The reference that's in the federal register refers to a significant adverse comment. Correct. With 30 days. Correct. And it describes what it means by a significant adverse comment. So, it says, the commenter explains why the rule would be inappropriate, including an assertion challenging the rule's underlying premise or approach, or a claim that the rule would be ineffective or unacceptable without change. So, two questions. One, did your letter do any of that? And secondly, when did Mrs. Malese file a comment? Well, addressing your first question first, Your Honor, our letter did suggest that there was a problem with the agency's rule that the agency still needed to address because the agency- Who's our letter? Who's our? Who's the are in our letter? The letter was filed by my co-counsel in this case, by the New Civil Liberties. Did it say it was on behalf of Ms. Malese? It did not, Your Honor. It was done by the organization itself in its own capacity? Correct, Your Honor. Except- I thought Judge Rogers had asked you where Ms. Malese, I'm sorry if I'm not pronouncing her name correctly. Malese, it's okay. Malese, I apologize. I'm getting her more Italian than I should have. Where did Ms. Malese file a comment? Your Honor, Ms. Malese did not file a comment. We don't even need to deal with that rule about substantive comments. Well, we do, Your Honor, because the agency put the public at large on alert that this rule would become final only if it did not receive adverse comments. So any member of the public who's looking on regulations.gov and following the rulemaking process would see that this comment was filed. And the only way to know whether the agency has considered this to be an adverse comment is through the agency's inaction. Some other agencies will file a confirmatory notice after the comment period to confirm for the public that there were no adverse comments. But the way CPSC structured its direct final rule was to say, if we have not filed anything else before the effective date, then we have not filed an adverse comment and the rule will take effect on the effective date. And so until that point- Do you have any case where we filed the, we applied the incurable prematurity doctrine to someone who hadn't filed for further consideration and a reconsideration? I do not, Your Honor. And, but I just point out that there's also no cases that deal with direct final rules because direct final rules, by their very nature, remain tentative and are not final agency action until the agency confirms that it has not received any adverse comments. Sorry, so the agency, does the agency here routinely then publish in the federal register, we didn't receive any material adverse comments? So some agencies do, and the way that CPSC- Tell me about this agency here. No, this agency only lets the public know through its silence. If the agency has not filed a subsequent publication in the federal register by the effective date, then the rule will take effect as proposed. And I just point out, Your Honor, too, that under a construction that equates promulgation with publication in the direct final rule process, the public would be forced, basically, to choose between commenting or filing a preemptive lawsuit, a preemptive petition for review in court. And that's why we brought up the incurable prematurity doctrine because the same principles apply here in that I believe Judge Ginsburg pointed out that the purpose of the doctrine is to avoid needless litigation over agency action that is not yet final and might be mooted by a subsequent action by the agency that the agency has already been taken, has already been asked to engage with. And any member of the public who would go to regulations.gov would see that there's a comment, a multi-page comment raising serious constitutional arguments with the agency's practice, and would be- The process, but not challenging the substance of the standard at all? Correct, Your Honor. But I point out, Your Honor, and the first argument in our brief is that it is very difficult to challenge the substance of the standard because the agency has not made the standard available to the public during the rulemaking process. And so anyone who wishes to participate is forced to go to a third party and purchase a copy of the standard. And they might also purchase a redline copy of the standard which compares the proposed standard not to what the correct binding safety standard is that CQC has adopted, but instead compares it to a different ASTM standard that was never incorporated into law. So the arguments that were raised in the adverse comment  but they were also to the public's ability to question the substance of the standard. So when did this become final in your view? In our view- If you didn't publish anything else, how do we know? In our view, the rule would become final agency action when the agency had not published anything else by the effective date. So the clock would begin to run for judicial review on the effective date. And if you look at the text of the rule, that supports our theory because the text of the rule says that the rule will not be deemed incorporated by reference into the federal register until it's effective date. So the rule by its own terms remained tentative until the effective date and was not incorporated into the federal register and finally published until it's effective date. And I recognize that this isn't the typical formal rulemaking process, but that there's a reason that direct final rules are not typically challenged in this court. Can you direct us to any time when our court or any court has said that promulgation is the effective date rather than the date of notification in the federal register? Well, in this case, your honor, the dates are the same. There was the initial proposed rule that was filed. At that point, it's just a proposed rule. And the rule actually becomes formally incorporated by reference on its effective date. So I understand your honor's question that in most instances, there is a formal final rule published and then there's a lag and then there's an effective date that the agency might set 90 days or a year down the road. And you have to sue from the publication of the final rule rather than the effective date. But in the direct final rule context on which there, admittedly, there is no case law on direct final rules, but in the direct final rule process, the way that CPSC has structured this specific direct final rule, the rule remains tentative until its effective date. And it was not incorporated by reference into the federal register until its effective date. So this is a bit of a unique circumstance in that respect, your honor. Tell me what you mean by direct final rule. You mean just without notice and comment? Is that what you mean by that? Because it was definitely promulgated in the federal register and that's in the same way that a final rule would be after notice and comment rulemaking. Yes. So the direct final rule process sort of collapses the notice of proposed rule and the final rule into the two steps that are typically there's two publications and the direct final rule- In both situations. I just don't know how this is any more a direct final rule than an agency publication of a final rule after it has completed notice and comment rulemaking. We're at the same point. Congress doesn't require notice and comment rulemaking here in this context. And so in this context, just assume at least, if you disagree, you can explain why later. Assume there's no notice and comment obligation here. This final rule is the same as any other final rule. I don't understand why it's more direct final rule and why that would change all these jurisdictions. I'm just not understanding why that changes all our precedent in the jurisdictional calculus. Well, so in the direct final rule process, by its terms, the rule remains tentative and open to the agency. The agency says, if we receive adverse comments, we will pull this rule. And I directly- In the case that is said, when these things are published in the federal register, they're not a final rule. They're tentative for benefits purposes. They couldn't even be challenged until the second date. Yeah, so admittedly, Your Honor, there is no case law on direct final rules. And I direct the court to, there is a law review article that goes into detail. Yeah, I got that. But you don't have any case law that's drawing this distinction that you're advancing to us? I'm not, Your Honor, and I do not, Your Honor. And I suggest that that's because the direct final rule process is typically challenged, is typically reserved for rules that are deemed by the agency to be non-controversial and they're not expecting public comment. And when there is an adverse public comment, the agency is required to pull the rule and engage in the formal rulemaking process. So there's typically not an opportunity for judicial review because if the agency follows the terms of the process that it sets out, the case never arises for judicial review. So your argument then, in a nutshell, I don't mean to misrepresent in any way, and correct me if I'm wrong, is that taking this direct rule process as the agency has described it in the Federal Register in September of 2019, the rule became effective December 22nd. And there was no way for your client to have provided any significant adverse comments because the rule itself was not sufficiently available to you? Correct, Your Honor. I sort of separate that, parse that out a little more and say that the reason that our comments were limited to the inavailability of the rule was because the rule was unavailable. But I'd say as to the direct final rule process, our argument is that by the very terms of the direct final rule that was published by CPSC, when they published the rule, they said that this will only go into effect if we do not receive adverse comment. And we will let you know through our inaction that we have not received adverse comments. So there was no way for the public to know that there was final agency action until the effective date. And I think that's consistent with Bennett v. Spears, which says that a rule must not be merely tentative or interlocutory. And by its nature, this rule was interlocutory. And the rule specifically stated that it would not be incorporated by reference into the Federal Register, which would put the public on notice that this rule now triggers legal consequences. That did not happen until the effective date in this case. And I recognize that that's different than the typical rulemaking process. And Your Honor, I see that I'm well past our rebuttal time. Well, you're trying to help the court understand this process. So I don't think we're holding you. Yeah. In 2056A, Congress itself says in this context where you're not challenging the underlying standard itself, your whole case is about an amendment to the standard. Yeah, a revision, Your Honor. Yeah. And Congress said it's going to take effect unless the commission decides that it doesn't improve safety. Right? So it actually makes things worse, not better. That's essentially... Otherwise, the commission has no choice. Great. Do you read this Federal Register language as defying this congressional command or putting into effect this congressional command? Unless we get a comment that shows that this is less safe, it's going into effect. Or you think they were adding something else in. Unless you think it's less safe or you don't like the process, it went into effect. Yeah, Your Honor, the language that you're referring says that it'll go into effect if the agency determines that it's going to make things more safe after 180 days or a separate time that the agency publishes to the Federal Register and the agency invites hope. It's the only standard, the only basis on which they cannot let it go into effect that it's less safe. Correct. And there was nothing in your comments that was about less safe. Our comments were that they... It's impossible for the public... We don't know. Okay, we don't know. That's not a comment that it's less safe. But that is a comment that is asking the agency to withdraw the rule and go through... They got a congressional command here that it takes effect unless it's less safe. Unless the agency sets a different date in the Federal Register and... When they do that, they can do... They don't have to have it take effect for all different reasons. I would have thought this congressional... They could maybe have a different timeframe, maybe a shorter one if it was urgent for public safety. But we're dealing here with a particular category of products that Congress wanted safety over everything and wanted the agency to move quickly. Your theory is that the agency could have said, oh, this won't take effect for procedural reasons. We won't have safer baby bath seats for six months or a year while we deal with this procedural issue? Do you think you have a duty to do that under the statute? I think that reading the statutory scheme as a whole Congress... Do you think you have a duty to do what I just said under this statute? To hold up on making bath seats safer for six months or a year while they address a procedural debate? Oh, I suggest, Your Honor, that the procedural debate and the standard being available during the public comment period, the agency itself determined that public comment would help ensure that this... I would just like a yes or no question. So you read this statutory language as saying safety will be passed aside and postponed if there's a challenge on another ground and challenge the substance of safety. Maybe a procedural one. You have a procedural one here, no doubt. That's your view of the statute. My view of the statute is that I agree. Yeah, I agree with Your Honor that the statute is designed to promote more safe standards and the agency decided that by opening this up to public comment, it might promote more safety standards that are safer and the public might have something to say. And our point was that there's no way for the public to properly engage in that process and ensure that these are the safest safety standards unless the standard is available during that process. When did ASTM post this standard on its website? My understanding, Your Honor, is that ASTM has changed the structure and nature of its reading room after we filed our petition for review in this case as the CPSC has also changed the nature of its reading room in that it now exists that if you do contact the agency, they do now seem willing to provide access to Bethesda Reading Room, but that access is still limited to Bethesda Reading Room.  Your Honor. And Ms. Melisse attempted to review this in the reading room or from ASTM prior to... Correct, Your Honor. On what date? She contacted... Ms. Melisse contacted the exact date. It was in January at some point in preparation for... It's in her affidavit. It's in her affidavit. Is it? Yeah. And what she was told by CPSC was we get calls like this all the time and we can't make the rules available because basically that's ASTM's intellectual property and they have to make money somehow. But she didn't even contact them until after the effective date. She didn't contact them during the comment period, right? Correct, Your Honor. So, I mean, explain to me... I mean, we have a situation where she doesn't make a comment to the extent that she seeks to know what the standards were. She doesn't do so until after the comment period has expired and the regulation is now effective.  We're here, Your Honor. I'd note that during the comment period, Ms. Melisse would have been at the beginning of her first trimester and not exactly looking at infant vaccine safety standards yet. She doesn't have standing in them. Excuse me? Sounds like she wouldn't have had standing. I'm getting very confused. You're saying that during the relevant time period, she wasn't injured because she wasn't thinking about baby vaccines? When the comment period opened, she was pregnant, but she wasn't... One can think about baby safety and not think of first trimester. Right. No, you're absolutely correct, Your Honor. But I'd note that the standing in this case is conveyed on Ms. Melisse through statute, which says that consumers are able to petition for judicial review of these standards that are promulgated by the agency. And under our theory, the rule did not become... She doesn't claim to be aggrieved by the standards. She claims to be aggrieved by the process. And that it's a process that you're saying she wasn't actually yet interested in at the relevant time. I understand your comment, Your Honor. And I think my response... Go ahead. Sorry. I understand your question, Your Honor. My response would be that Ms. Melisse was pregnant and was in the consumer market for consumer products during the rulemaking period. And she filed her suit within 60 days of the rule becoming a final agency action as 2060 requires. And so she meets the statutory burden for standing in this case. If the agency were to have raised that Ms. Melisse didn't personally file a comment, perhaps that would be a different case. But the agency did not raise that as a defense in this case. And that I believe would be a forfeit for her. And the jurisdictional enforcement, we have to raise it ourselves. Do you agree with that? Yes, Your Honor. The jurisdictional, we have to raise it ourselves. No, I agree with you. And that's why I'm suggesting to the court that under the statutory jurisdictional requirement, Ms. Melisse does qualify. And if there were some quibbling about whether or not she personally filed an adverse comment in this case, it was incumbent on the agency to raise that. And now that she can see it online for free now. And this isn't a damages action. And I haven't heard that since it's available online for free now that she has identified substantive concerns with the safety of the standard. So what remedy are you seeking? You asked us to get rid of a rule that makes bath seats safer. Because of the process that she now knows wouldn't have changed. She doesn't claim, at least doesn't argue, would change her view of whether this rule should have gone forward because it makes bath seats more safe. Your Honor, Ms. Melisse would be satisfied if this court kept the rule in place, but remanded for a rule-making process with the standard open to the public and required that the agency- But she can see it now free online. And so, I don't know what remedy we're supposed to provide. Your Honor- She doesn't say that had I, look, I didn't see any argument in your brief that had I seen then, and had I been interested then in what I see now, I would have made X, Y, or Z comment. I see no prejudice argument. I see no argument that anything would have changed whatsoever. And you argue for vacature. Are you now abandoning that, I take it? The reason we were arguing vacature, Your Honor, is because we believe that we couldn't know is what would be the safest safety standard without the rule being available to the public during the commenting process. And the purpose of the commenting is to promote robust and diverse comments to protect the rights of the consumers and to develop the factual record before this court reviews. And we weren't able to have that happen in this case. And so that was our idea. But we do recognize that if, we do recognize the problem with vacating the rule entirely and not having a safety standard in place. And this is something, not vacature, I just, I'm still not, because again, the rule is available free online. Oh, sorry, Your Honor. I haven't heard, I didn't see in your brief, and I haven't heard today, but maybe you want to tell me now, any substantive objection to the backseat standard with a, had I known then, and had I been interested then, you said she wasn't, but had I been interested then, and had I known then what I know now from looking at the free online version of the standard, here's what I would have told the agency to make backseat safer. So I guess the point that I skipped over the last time, Your Honor, we do not believe that the standard still is not available for free online because it's available through ASTM's reading room. Only the agency itself has not made the standard available for free online. And there is nothing, there is no legal mechanism requiring ASTM to keep the standard online for free in its reading room. And- Has she or you as her counsel looked at the standard? I have, Your Honor. And you're her attorney, so you can describe to her and advise her if there was something about it that was unsafe, some arguments for her to make. Yeah, Ms. Melisa does not personally have a substantive challenge to the safety standard itself. Ms. Melisa- She's been aware of now that she could look at this online for free. Correct, Your Honor. And Ms. Melisa's position is that the safety standard would benefit from being publicly available because it would open it up to robust public comment. And by keeping the law hidden, and it's doing a disservice to the parents and children who are looking to buy these products because we can't be certain that these are the safest standards that we could have. Well, that's not what's going on here. There's a technical amendment by ASTM. The statute tells the CPSC what to do with that. If she thinks they could be even safer than this, she needs to petition for ruling. Right, this wasn't an open-ended comment period. It's like, here's a new change in standards by ASTM. We think it doesn't make bath seats less safe, makes it more safe. So we're going to go forward with it unless someone tells us it makes it less safe. And it sounded to me like your argument now was, well, you know what? We don't disagree with that, but these things could be even safer if you open it up to public rulemaking. That sounds like a petition for rulemaking is needed to me. At the core, Your Honor, Ms. Melisa's argument is that binding safety standards need to be publicly available, both during the rulemaking process and after promulgation. And without access to the law, the public is deprived of its right to see the law, its right to disseminate the law, its right to argue for more stringent safety standards. It's the whole plethora of rights that come along with the right- It's kind of a going forward, the agency should comply with what you would say the Constitution and statute requires. Going forward, the agency should comply with the law. That's her interest? Correct, Your Honor. Ms. Melisa's interest is, within the agency, not relinquishing its control on the law. Ms. Melisa believes that the CPSC needs to make its binding safety standards publicly available in the way that all other law is publicly available. The CPSC, the FOIA amendments to the APA, the Federal Register Act, all of these laws were put in place to promote more public access to the law, and they cannot be read in combination to somehow create this exception that allows the agency to hide its law, behind a table. All right. So why don't we hear from the agency, and we will give you some time on rebuttal, because we took up a lot of your time on the threshold. Thank you. I appreciate that. Issues of concern to the court. All right, counsel for the agency. Good morning, and may it please the court, Courtney Dixon, for the Consumer Product Safety Commission. I'll start with the jurisdictional question that the court has asked about. With respect to the incurably premature point, your honors are correct that it was NCLA who filed the comment to the commission. It was not Ms. Malise herself or NCLA purporting to act on her behalf. And this court has made clear in its case law that the incurably premature doctrine is a party-specific doctrine. It's a timely objection to an agency rule, renders that rule non-final with respect to the requesting party. So Ms. Malise herself could not take advantage of that doctrine to save the rule from untimeliness. If there are other questions on the jurisdiction point, I'm happy to address those. What do you do about the federal register thing, which seems to say, unless we receive a significant comment. So your honor, did the court, in fact, and so if you get a significant comment, is the rest of the world to think it's now a non-final rule and we can't file a petition even though we didn't file the comment or is it specific to the part? It's a little bit unusual, normally reconsideration is not framed like this. Two responses to that, I guess first with respect to this court's case law and then I'll respond to some of the petitioner's specific arguments in this regard. First, this court's case law states that the default rule is that a rule is promulgated on the date that it's published in the federal register and here that happened in September, 2019 and indeed petitioner herself in her petition for review and in her brief describes the promulgation date of the rule as September, 2019. This court has explained that statutes and regulations can set a different promulgation date outside of the default rule, but there's no statute of regulation that does that in this respect and petitioner hasn't identified any. So under this court's default rule, the best argument or the best answer for when the rule is promulgated is the date it was published in the federal register, the September date and as your honor's questions earlier reflected, I'm not aware of any cases in which the effective date of the rule is seen as the date of promulgation. With respect to the question- So let me be clear, what does that mean as to anyone who wants to challenge the rule? That's what I'm trying to understand. You're saying it took effect in September. It was promulgated in September, your honor. It took effect in December and your honor's question- I understand that, but I want to understand what the significance you attach to the promulgation date. Certainly, and I think this perhaps goes to Judge Millett's question as well and some of the things that petitioner was saying in his presentation. At the time that the agency published this rule in the federal register in September, the agency said, ASTM has revised its standard. These were procedures for considering revised standards. These are the changes that ASTM has made to its standards. It summarized those changes and explained its findings that these standards either, these changes either improve the safety of infant bath seats or they're- Okay, I understand the agency said we're invoking the good cause exception, okay? But then it goes on with this paragraph to which I alluded in questioning counsel about this significant adverse comment. So what does that do to the promulgation of the rule? Right, so in that federal register notice as well, your honor, the agency explained that it was going to incorporate ASTM standard by reference. And then it said, this is going to take into effect in December unless we receive a significant adverse comment that calls into question this approach. There is, the public can have it say if it wants, we've explained our process. So at that time, we take- Let me just say, counsel, with all due respect, it says unless we receive a significant adverse comment within three days, the rule will become effective on December 22nd, 2019. Yes, your honor, and that's the effective date of the rule. And so what is the significance of the September promulgation? That's what I'm not clear from your argument. Right, so that's when the agency published its rule. You gave notice. Here's what our rule is going to say. And it explained its reasoning and that would become the final rule of the agency unless the agency withdrew that and then would proceed, presumably, depending on the significant adverse comment, if the agency could, depending on how it fit with its substantive rules, the agency could- Okay, I just want to be sure we're talking the same language. So it publishes notice of its proposed rule in September. All right, and it says it's going to take effect in December, unless... So the key date here is the December date, is it not? That's the date that the rule was set for the effective date of the rule, your honor. But again, the promulgation date, the date that this rule was published in the federal register was the September date. And this court has stated, that is the presumed date that a rule is in fact promulgated. And what do you think that means? Your Honor, it's when the rule, just like a final rule would be published in the federal register- You're using the two terms that's synonymous, and I'm suggesting that at least, based on what the agency put in the federal register, it drew a distinction. Your Honor, it's not infrequent that the agency- I'm not suggesting it's frequent or infrequent. All I'm talking about is this rule. And in my view, this is complicated enough without equating promulgation and effectiveness. Well, Your Honor, I guess what I was going to say, it's not infrequent that an agency will publish a final rule and then set the effective date of the rule to be any amount of days in the future to then provide the public- Irrelevant. That's all I'm trying to say, counsel, is that's what the agency said. Now, tell me how it works in this situation. All right, counsel has said, we read this too. But it's impossible for us to do anything in accordance with what the agency wants because we haven't been able to see the rule. And I would disagree in several respects, but I guess I'll just say, you know, if Ms. Melisse looked at the September date, the September rule that was published in the Federal Register, which was titled Direct Final Rule, again, it explained the changes, the commission's process, it explained that the agency was going to incorporate it and it set out, again, its reasoning for all of that. Had Ms. Melisse thought, hey, this standard needs to be published itself. ASTM standard needs to be published itself in the Federal Register, which is her merits argument here. And I can't provide a comment because it's not published here. Then Melisse could have submitted a comment to the commission. I mean, NCLA submitted one to the commission, and then there might be a question of whether, you know, that comment submitted within the 30 days rendered the rule non-final after her. Of course, she can't take advantage of that because she didn't file a comment. She also, she had all the information she needed before her at that time to file the challenge she's filed right now. Again, her merits argument is that in September, the agency needed to have provided the full text of ASTM standard itself online. She could have made that exact argument in a petition for review filed within the 60 day window. So she could have filed a comment. She could have filed a petition for review. What she couldn't do is what she did here, which is to just stay silent for five months and say, hey, I'm really interested in what the agency is doing here. I hope, I think it's wrong. I want it to change its mind, but I myself, I'm not going to see or do anything. And so I think that's the situation that we're in with respect to the timeliness of her petition. But how does a comment, to follow up on Ben-Guraudi's question, how does a comment, I'm trying to understand the interaction between your language and the federal register and 2056A, 2056A, B, how am I going to get this? Four, Your Honor. 4B, the statute. The statute, it says, there's already a standard adopted here. That's water under the bridge. They can't challenge that. This is just some amendments or updates were made to the standard. So the baseline standard is not an issue here. It's just these updates. And when there's updates like that, they go into effect at congressional command within 180 days, unless the commission's fines could do it based on a comment or on its own, but it makes things less safe. So Congress here, there were listed categories, the expedited judicial review ones, and ones where Congress was most urgent about things that will make things safer going into effect immediately and nothing getting in the way. But then your federal register notice doesn't seem to say the rule would be inappropriate, including an assertion challenging the underlying premise or approach. And so you were just talking about had she filed an objection that said your approach, which I can't tell if it's more safe, less safe, or the same, because of your approach by incorporating by reference and not telling me what the standard is. Is it your view that had she filed something like that, using your approach language from the federal register notice, it would have made the rule no longer final and Congress's command about effectiveness would have ceased to apply? You know, I think that there would be a question at that point, whether the incurably premature doctrine applies in this context. Of course, we're not dealing with that question here because petitioner herself did not file a comment. I think that your Honor's question is getting at kind of the reasons why the commission did reject NCLA's comment here and did not consider it a significant adverse comment, because the comment that in, at least with, and didn't withdraw its rule and let the rule go into effect, because NCLA's comment said, you know, hey, you shouldn't use these private voluntary standards that are, you know, behind a paywall as they characterized it. And you should publish it and pull in the register, the federal register. And the commission said, well, one, we're constrained to use AFPM standards at this point. So you're not taking into account our substantive requirement under the 2056A-B4B language that your Honor read. And then there's the secondary point of also, you know, we're allowed to use incorporation by reference and NCLA's comment hadn't fully taken into account the incorporation by reference procedures. And so the commission determined that NCLA's comment was not, in fact, a significant adverse comment that would have required it to withdraw its rule in light of Congress's command in the statute. But how does this work, because if someone had, I'm sorry, finish your sentence, I apologize. No, I was gonna say, it's a little bit of a counterfactual perhaps to know if someone had filed a comment saying, you know, questioning, I don't think that this improves the safety of infant bath seats, or I don't think that you should be using ASTM standards at all. The commission may have considered some of those not significant because it's not matching the statutory standards. The commission might have considered them and taken a different approach. It's a counterfactual to know. But in this circumstance, NCLA's comment didn't change the rule that the commission had promulgated. And just to understand how this whole thing works, if someone had come in and filed a comment that said, wait, just assume a hypothetical change, you're increasing the size of the circle where the legs go through. And now I think it decreases safety because now a baby's head could get stuck in that hole or something like that. So you get something that is addressed to substantive safety. One, does the agency, because you said before, make it not finalist to her. Would a comment like that make it not finalist to say that manufacturer? Or would it make it non-finalist to everybody? Or would you withdraw it to study? Or what if you just didn't agree because that had been tested for? I'm just trying, how does it work if you actually had something that was talking about the measurements itself? I can't say for sure because here there wasn't. Well, but you represent the CPSC and surely it's happened that someone has filed a comment that addresses safety. Is that not, maybe not? You don't get them? I can't speak with respect to ASTM standard if it's been incorporated with respect to this particular rule. I'm not aware of a circumstance because the agency has- I'm not telling you, because I don't want to suggest anything about ASTM as a rule one way or the other. That's not my area of expertise. I'm just saying, if there's some standard suggested and a manufacturer thinks this makes it worse, not better, what happens then? Because you had said before, had you filed a comment, it might make it not effective as to her. Which makes me think that if someone files a comment, it just suspends the application of the rule as to that filer. You're right. Again, it's hard for- I don't know how that would play out in practice and it might, if- The commission has never gotten under this rule, not under this bath seat rule, but under the statute here. It's never gotten a comment that says that makes it less safe, not more? I am not aware of a situation. That's not to say it hasn't happened. I'm saying that I'm not aware and I also, again, don't know how it would play out in this particular context where you have the specific infant bath seat standard. Again, there's a specific process prescribed and diversion of ASTM's bath seat standard has been incorporated as the commission standard for over 10 years. There have been at least two other circumstances in which the commission updated ASTM standards through the process that we've been discussing. Had a manufacturer said, you're wrong about your evaluation of this standard substantively. It doesn't improve the safety of infant bath seats. I imagine the commission would take that seriously and might reconsider its approach. I can't say- It compiles a substantive comment. Let's say it's one that complies with the terms here. Is that a matter of public record that all of industry would know that's there and the standard isn't going to take effect? Or how are they? Would everyone know? How would someone know? It might be on the rule making again, I'm not certain your honor. But there's a 30-day comment period. And of course, again, I haven't received a substantive standard calling into question the safetiness of infant bath seats. The commission would have taken it seriously. But again, in the circumstance we have here- The public record. I'm sorry? The comment period comments are all on a public record. I'm not certain for sure. They might be on a public docket, but I'm speculating. I don't know your honor. But again, here, with respect to Ms. Melisse, she didn't submit a comment. She didn't file her petition within 60 days. And the comment that NCLA submitted, you know, doesn't change that. I'm happy to address the questions on the merits as we explain in our brief. The standard is reasonably available here. The APA's incorporation by reference procedures were followed. And petitioner's argument that in order to be something has to be posted for free online by the commission is not compatible with the statutory requirements. Do you know when it was posted, when it first became free online by ASTM, what that date was? Your honor, it's not reflected in the record here. My understanding from the agency is that it was posted in ASTM's reading room in January 2020. That was before the petition for review was filed on this case. And after the effective date. The effective date was December 22nd, it was January 2020 when it was posted in the ASTM's online reading room. So during the comment period, unless you had the financial wherewithal to pay for the standard, you couldn't see it. If you're a member of the public, you couldn't see it. You don't have the financial wherewithal and you don't live in D.C. or the MDBA area. It was available for inspection, you know, in the D.C. area. If they can't afford the money to pay for the standard, it may well be that they can't afford a plane ticket and a hotel in Washington, D.C. And the incorporation by reference requirement, for one, it takes place, it's whether something is published in the Federal Register for purposes of the effective date. There's not a requirement from OFR that something be, that all the incorporation by reference standards be met even at the proposed rules making stage. Certainly the agencies across the federal government and the CPS. I'm very confused here. The September publication of the final register was not proposed rulemaking. That was announcing the final rule. Certainly. I guess I mean the effective, it wasn't available prior. The fact that it wasn't available prior to the effective date, Your Honor, I guess is what I'm trying to say. But the, I think, What's the comment if they can't see it? Well, first, Your Honor, I mean, with respect to this case here, petitioners haven't identified I'm just asking you how the commission thought this was going to work. We are, again, a version of ASTM standard has been incorporated. I thought how the commission thought in September 2019, this was going to work. Sure, again, ASTM standard has been, has long been the commission standard and manufacturers have been using this standard. Manufacturers certainly are. I thought from the statute that consumers and the public had an interest. Did I fake it? No. And they do have an interest, Your Honor. And again, there's no, there's not any suggestion here that a consumer had an objection to the substantive requirements. They couldn't see it unless they lived in this area inside the beltway. I also don't know, Your Honor, there's no suggestion that a consumer couldn't, couldn't see it. Petitioner herself didn't try to contact the commission to inspect. You tell me how you just, I just asked you how the commission thought this was going to work and I can't get an answer from you. How did the commission thank the consumer that loves their baby as profoundly as can possibly be, but doesn't have a lot of resources and lives in California, Arkansas, Nevada, pick your state, Montana. How were they going to comment? So I guess I'll back up and I apologize if it was seeming that I was avoiding your question. I want to emphasize as well that when the agency published its direct final rule in September, as I noted earlier, it quoted the changes that ASTM had made to its standard. It described those changes with some detail and it explained its findings of how it believed that those standards improved the safety events of Batsy. Did your explanation make any sense to someone who doesn't have the underlying standard as well? Yeah, I mean, I guess it's a little hard to know what would have necessarily made sense in the sense that this is a technical manufacturing standard that's supposed to be used by manufacturers to manufacture Batsy. The agency, for example, quoted some, some things that are understandable to a consumer. For example, the agency quoted in full some wording changes that ASTM had made with respect to its label to say, you know, to use more direct language of stay in arm's reach of your baby as opposed to keep your baby in arm's reach. Those changes are quoted in full. There are quoted definitions of- The tests that were conducted. I'm sorry? The tests that were conducted described. I don't know how you can know any of this development. You don't know what this, how it was tested. I guess by tests that were conducted. I'm not sure exactly what, what you mean, your honor. Description of a bunch of technical mumbo-jumbo without any sense of what was tested, how it was tested, what these numbers mean, or even what the underlying standard is, seems to me. I guess we're going to run for consumers. We're again, you're in the context, your honor, of the 2056A-B4B of, these are the revisions that ASTM has made to a standard that's already incorporated into law. And we're looking at these revisions and determining whether they, we can't accept these provisions unless they do not improve the safety of infant babies. And so the commission then was quoting the revisions and explaining the revisions and how the revisions would be, clarifying information. I can't tell from reading the federal register. I look at that and I can't tell what's going on to make an informed judgment about whether safety is improved just by reading that without having any doubt what the underlying standard is, what tests were, what kinds of tests were applied and deciding what changes to make or not, what tests weren't done, any of that. Well, the commission explains, for example, that, you know, I think it probably depends on the nature of the changes as well. And that if, for example, here, the commission says that wording was moved from an explanatory parenthetical into enforceable testing requirements. So something that was just prior in an explanation is now more clearly set forth in the test itself. So it's more clear to manufacturers who are making this, what is being, why you're conducting the test, what needs to be done. That's explained. I think, for one, if you're a manufacturer, you most likely possess a copy of this standard. You already own it and you're going to understand. No, I'm talking about consumers here. I'm not talking about manufacturers. And a consumer, I mean, again, could have accessed ASTM standard by the commission's headquarters or purchasing it. But I think, you know, it's a technical manufacturing standard for that intended for manufacturers to be using in manufacturing fast seats. And I think it's telling your honor that again, the petitioner herself has not identified any critical comment that she would receive. There's no indication for any consumers of a critical comment that they would have provided had they had the supposed access to the standard that they say was required. And certainly within the context of this case and petitioner's 553 challenge, even assuming that it's correct that there wasn't the adequate provision of the standard that she says is required, which again, we don't think is correct. She hasn't shown error. And that's a requirement for this kind of 553 claim. So with respect to this case, your honor, it's significant that she hasn't, again, identified any such comment. And I think it maybe belies the assertion that there hasn't been adequate notice that there isn't any such comment even proposed that someone would have provided. All right. Thank you. Thank you. So counsel, let me just carry on. It pleases the court, Kevin Fee on behalf of American Society for Testing and Materials. I thought in light of all the court's questions  it might just make sense for me to start with that for a minute or two. From ASTM's perspective, we see this as a relatively straightforward timeliness problem. The petition for review concedes that the direct final rule was promulgated on September 20th, 2019. And section 2060 G2, which is the jurisdictional provision at issue here, says that a petition must be filed both not later than 60 days after promulgation. The petition here was filed on February 20th, 2020, and that's not within the 60 day window after September 20th, 2019. So it's untimely for the court to consider the petition. This court lacks jurisdiction over this petition. Now, very briefly, NCLA's argument, and petitioner's argument as far as I understand it, is that their letter constituted something that was effectively requesting reconsideration of the direct final rule. So could I be clear, counsel, your position then would be, or would it, that what was published in the federal register was contrary to the statutory scheme in the sense that it talked about this significant comment within 30 days? No, I don't think that that's contrary to the statutory scheme. If there was a significant comment that, as Judge Malit was alluding to, indicated that the safety standard was not, in fact, safer than the prior standard, then I presume the CPSC would have withdrawn the rule. But it was a final rule when it was promulgated in September of 2019. Well, you're saying, as I understand it, she would have to file a petition within 60 days of the September date. Yes, Your Honor, that is our position. And the way you're reading the federal register announcement is the commission would have received comments before then and could determine whether or not there was a significant adverse comment. The commission could have done that, Your Honor, yes. Just trying to understand how the process works, Counselor. Yeah, so my understanding of how the process should work is that the direct final rule was, in fact, the final rule as of September 20th. If anybody wants to challenge that rule, at least preliminarily, there could have been two avenues they could have gone down. They could have filed a letter that they claimed identified a significant adverse comment or within 60 days, they could have filed a petition with this court. Here, the petitioner did neither of those things. The petitioner did not file a letter suggesting that there's a significant adverse comment, making a significant adverse comment, and it did not file a petition within 60 days of the promulgation rule. So one last point I want to make on that front is I didn't allude to the fact that petitioner claims that her letter or really her counsel's letter constituted effectively a request for reconsideration of the direct final rule, and therefore it's the petitioner's time to file its petition should have been extended. But that's the reason we identified the Laminator Safety Glass Association case to the court in our letter addressing jurisdiction because that case, the D.C. Circuit made clear that there is no reconsideration mechanism under Section 2060. And so reconsideration petitions cannot be, cannot extend the 60-day time limit. So we think that the D.C. Circuit's precedent is clear on this point that there is no basis for extending the period for filing the petition. And in that case, there was no process such as described here in the Federal Register. That's why I asked you whether or not you thought it was contrary to the statute. You thought, no, it was not, I understood your answer, it was compatible with the statute. That's right, Your Honor. So unless there are any other questions. Can I just be clear? Do you not understand that to be a process for reconsideration? It's a 30-day window. So if you get an adverse comment, suppose, you know, someone filed saying, you know, by enlarging the size of the hole here, a lot of babies' heads will get stuck because heads are generally smaller now than they used to be 10 years ago, something like that. So you're saying, yeah, if we get that, and presumably we think it's, you know, got some reason to explore it, then we'll pull the rule off. Until we can examine it. Sure, the commission could have done that, certainly, Your Honor. And, but even if you analogize the period for having a significant adverse comment filed to a request for reconsideration, the Laminator Safety Glass Association case makes it clear that any potential request for reconsideration under the CPSA  limit for filing a petition with this court. Thank you, Your Honor. I think that's a good point. So turning to the... Oh, go ahead. No, go ahead. What did you want to turn to? I was going to turn, Your Honor, to the March of this, unless you had any other jurisdictional questions. To the what? To the March of the case. Well, if someone, I'm still trying to understand and maybe you know, if there were a substantive safety standard, like the baby's head could get stuck in a now bigger leg hole, what would it... You said the agency could, but what I'm trying to understand is what happens. That's filed, let's assume it's filed as a matter of public record. I guess we don't know, but let's assume it is. Once it is, does that mean... And let's assume it's filed by a consumer, not by a manufacturer. What happens then, because the agency presumably isn't within minutes going to decide what to do. So the agency's trying to figure out what to do and thinking about this. Let's say that comment is filed the last day for comment. So it's timely, but now we got a closer window to the effective date. Effective date's approaching, the agency still hasn't said anything one way or the other. Does that mean it's not effective? It's not effective when there's something, a comment like that is lobbed in. Unless the agency says something, we should assume it doesn't meet the standard and it will go into effect. And if, changing my hypothetical, it was filed by a manufacturer, would it just become not effective for that manufacturer? Like conditions of reconsideration usually work, or would it be for the whole industry? I just don't know how it works if you actually have a safety, a safety comment. So what I would expect to happen in that circumstance is the CPSC to evaluate whether or not the comment actually raises a significant adverse issue. And if it did, it could withdraw its- Well, that takes some time. So they're sitting there studying and I'm trying to figure out whether I need to get new equipment in, rejigger my existing equipment to manufacture this thing. I didn't make the comment. What am I supposed to do? Well, Your Honor, if you're a manufacturer and you have a concern like that, I believe you should make a comment and or file a petition with this court. Well, I was going to and I saw someone already lobbed it in. So it's there. My comment's already been made. What do I do? Yeah, I think that that gets to the point that you were talking about earlier, Your Honor, that to the extent that you consider what a letter that purports to be a significant adverse comment to be analogous to a request for reconsideration, the incurable prematurity doctrine only applies to the party who made that request. And so if you were an other manufacturer that had a safety concern, I would expect you to either file your own letter identifying a supposed significant adverse comment or file a petition with this court. And I just had a question about your license agreement. It says that someone who's going to look at this free online version cannot exploit any of the material contained on this site and whole room part without the express authorization of ASTM. So if a consumer were to look and a consumer were to have a serious concern and let's change it because I don't want to. Let's say it's a different standard company. It's not your client. It's company X that makes their standard company standard creating company X. And I'm deeply worried about what standard now that I've looked at it online, checked all these boxes. I want to put a comment in because I'm deeply worried about what standard creating company X has done here. Is that exploiting the material? And so they would have to have the permission of assuming they have the same license agreement. You do, right? You would have to have the permission of the company to make that comment. I absolutely don't think that would be exploiting them in the context of that license agreement. What does exploit mean in you? And can you tell me what exploit means in your license agreement? I would say exploit means just exploit in a commercial manner is what the license agreement is referring to. In any way. Right. And your honor, I think another important point maybe to make on this front is to the extent that any agreement such as terms of conditions with the fair use requirements,  there is preemption for that. I'm sorry, counsel, having trouble hearing you. I'm sorry, your honor. There's a preemption doctrine that provides. I'm a simple consumer. I don't know copyright law. And I just read this in any way exploit. And I'm going to have to take. And I want to tell the CPSC as soon as possible that I think there's a real problem with company access standard. And I'm supposed to know that exploit has to be interpreted with the fair use provision. And so make this a lot clearer. Fair, your honor. I think that there is room for improvement on some of the language in the license agreement. Realistically, so the court has the context that license agreement ASTM doesn't enforce against consumers ever. What that is, therefore, is to ensure, for example, that there's not going to know that as a consumer rating. If I understand that, your honor, you're right, but I guess it's possible. If they really want us to be free online, they might want to do a real careful read of that license agreement because there's a lot of stuff that would scare even me off. Let alone less informed consumers. That's certainly not the intention, your honor. That license agreement is really only there for. Not really free if people feel like they're going to get. They can't either use it for what they want to use it for, or they feel like they have to agree to a lot of standards that are going to sound pretty onerous to them in the process. That's fair, your honor. The reason that's there is to prevent foreign entities from making unauthorized copies of these standards and selling them online. So the complete legitimate concerns is just not have this license agreement seems to be right, at least for the white person. Fair enough, your honor. But really, at the end of the day, your honor, I think what the petitioner's argument wound up at was it is asking this court to adopt the rule that federal agencies must publish thousands of privately authored standards that were admittedly copyright protected without the copyright owner's consent. Based solely on the fact that a federal agency such as CPSC happened to incorporate the privately authored work in by reference. Can I ask a factual question? When did the ASTM become aware of the comment that was filed by the NCLA in this case? Your honor, I don't believe that the ASTM became aware of that comment until after actually the petition in this case was filed. We didn't learn of this petition even until I believe May of 2020. So when comments were made, was there a process in place for ASTM or anyone to go onto the commission's website and see the comments as they were coming in? I don't believe that ASTM certainly has a forum where parties can see the comments that were made by others in response to the rulemaking. What ASTM does as a policy with respect to works that are incorporated by reference by the federal government is they work with the agencies when and are willing to put them available on their online reading room even before they're incorporated by reference during the comment period so that the public has easy and free access to review those in connection with the rulemaking process. In addition, once they become effective, ASTM has a process in place to make those works available online in the reading room going forward while they're, once the ASTM becomes aware of the effectiveness of the regulation that incorporates their work by reference. That's a new policy. That wasn't in effect here. But Your Honor, that actually... I'm just asking this as a yes or no question. No, the answer is no. That is not a new policy. How come it wasn't posted free online until January? Well, the reason it wasn't posted online during the comment period was because the way that the system works is the federal agencies notify ASTM of their intent would incorporate by reference in ASTM standard. And once ASTM receives that notice, it then puts the standard issue in its reading room. For whatever reason, the CPSC in this particular instance did not notify ASTM of its intent to incorporate this new work into a rulemaking, a final rule until, well, never did actually. And that's, I think, as we alluded to in our brief, we've now worked with the CPSC to ensure that that process is followed going forward. Normally you get notice from agencies and there was just some sort of glitch in this case. That's correct, Your Honor. And it's a long in the policy of ASTM as well to ensure that works, that it becomes aware of, that are incorporated by reference by the federal government are available online for free during the timeframe that they are incorporated by reference in any standard or into any regulation. So realistically, there should not be, and I don't think really ever is, a real problem with persons getting access to these standards. One other point I want to just make. I just ask, so in this instance, for example, in September, the standard would have been available on your website, your client's website? The standard would not have been available in the free online reading room in September because the CPSC did not notify ASTM of its intention to incorporate that standard. Okay, but had it notified, then it would be. That's your representation. Yes, Your Honor. That is the process that ASTM has in place with the federal agencies that incorporated standards. So getting back to the petitioner's argument, it finds no support in the Copyright Act, the Freedom of Information Act, or the Constitution. And taking a distressed step requiring all these standards to be published online by the CPSC without restrictions would dramatically undermine the private standards development ecosystem that Congress sought to advance when it enacted the National Technology Transfer and Advancement Act. And as a result, we believe the petition should be denied. The petitioner attempts to rewrite the Copyright Act and alter the decades-long private-public partnership based on her claim that a single ASTM standard was not reasonably available under the Freedom of Information Act. But the Office of Federal Registers consistently found that ASTM standards are in fact reasonably available, including the standard issue in this case. And that's hardly surprising because anyone with access to a cell phone or internet access can easily access the standards at issue almost instantaneously and for free. In addition to the online reading room, ASTM makes its standards available for purchase at reasonable prices, ranging from 35 or so dollars up to approximately $80. This goes far beyond what is required by the reasonably available standard. The plain language of reasonably available does not require the government to provide unlimited and free online access. The term reasonably available... How often do you update these types of standards? Does that tend to be like kind of a yearly thing? No, Your Honor, I think that as soon as we receive notice of either an intent to incorporate a standard by reference or that a standard has been incorporated... No, no, when you're developing the standards, how often are you... Oh, I'm sorry, I misunderstood your question, Your Honor. That depends on the committee. Yeah, that depends on the committee, Your Honor. You think that frequently it's two to five years would be most standards are updated. What about baby baths? Was this... Had it been two years since you've done a baby bath update? I think it was actually less, Your Honor. I think there was a 2018 update and then a 2019 update. So getting back to the plain language of the Freedom of Information Act, reasonably available does not mean available for free. The ordinary meaning of reasonable includes the possibility of a non-zero expense. Still less, reasonably available does not mean available for free online and without any restrictions on its use. No regulation could have met that condition when the Freedom of Information Act, Section 552 was enacted in 1967. Petitioner attempts to avoid a finding of reasonable availability by arguing that this court can only consider availability directly from the CPSC. But Section 552 of the Freedom of Information Act does not say that. It only requires that the works be reasonably available and it does not limit the availability to the agency incorporating the work by reference. As a result, petitioner is wrong to assume that ASTM's considerable work in making its incorporated standards widely available should be disregarded by this court. As I mentioned earlier, ASTM standards are much more widely available now than any standard or regulation could have been back when Section 552 was passed. And under any credible interpretation of reasonable availability, a standard issue is reasonably available. All right. Thank you, Counsel. Thank you, Your Honor. All right. Counsel for Petitioner? Thank you, Your Honor. I appreciate it. Um, on Counsel for ASTM's last point, our position is that to be incorporated by reference into the Federal Register, it's deemed to be published in the Federal Register. It must be published elsewhere. And our position is that that publication elsewhere must be done by the federal government or otherwise within the public domain. The law, we've suggested free availability online because to us it seems like the most efficient and cost-effective way to do so. But if the agency were to instead just make the law available the way that all other laws are available, that would also satisfy the standard. In places where Congress has allowed for costs to access the law, Congress has allowed for the incremental cost of dissemination. And that is a much cheaper cost than the market rate that ASTM sets in this case. Is something for Congress to consider? Well, we think that Congress did consider when it set this reasonable availability standard. And we think that under the flag... I still agree that... Oh, your point is reasonable availability means for free. We think that reasonable availability means that it must be published somewhere within the public domain which by its nature is free. And the public domain you define as what? I'm thinking of the history of this country. Yeah. And laws were not. In the public domain. And I'm not saying that's good or bad, but I mean, I'm just trying to understand where you're coming from. Well, I think Your Honor, dating back to the founding laws were always within the public domain because... They weren't. They were in the house of somebody who lived in Georgetown and you couldn't get them. I mean, there were terrible problems of access to those laws. I was interpreting Your Honor's question to be public domain and like the ephemeral sense of... I'm just trying to say it's not as... Could have cut historically. Yeah, I appreciate that Your Honor. And what we've argued in our brief is that the current standard of two physical copies available in Bethesda doesn't even meet the standard of 1795 when the government was distributing the law through the newspapers. And we've argued that what is reasonable evolves with time. And as the mechanisms improve to allow the government to make the law more accessible to the people, access to the law should improve as well. Well, in this day and age of the year we've all been through, we know there are many ways to make things publicly accessible. Right. And the reading room in Bethesda may be fine if you can access it over Zoom. And perhaps that would be... And that's why we think reasonable... To some extent, reasonable available is a squishy standard because there are... Like Your Honor just mentioned, there are things the agency could do to make the rule reasonably available. But what the agency can't do is relinquish control over that availability. And my colleague for ASTM said that they wouldn't interpret exploitation in their licensing agreement to mean fair use. But in that licensing agreement, you also have to give up any copyright claims. So how are you supposed to present a fair use defense if and when ASTM goes to enforce this licensing agreement against you? And... Let me ask you, did you have any response to any of the jurisdictional arguments that remained? Yes, I did, Your Honor. Thank you for asking. As a preliminary matter, we would just... If this case... If this court thinks that it needs to decide this case on jurisdictional grounds, we'd appreciate an opportunity for supplemental briefing that exceeds the 250 words that were allowed in the 28-J response. But... No, we gave you public notice that we would... No, I'm serious, counsel. We didn't even have to do that because you know that as an attorney. First of all, does the court have jurisdiction? Yes, Your Honor. And I would say that the first place that I point you is to the federal register where not only was the rule styled as a conditional rule that may or may not take effect pending some further inaction by the agency, the federal register also says this rule is approved by the federal register as of December 22nd. Sorry, the federal register says the action. This is a direct final rule. Your Honor, in... It's not styled as a proposed final rule or conditional final rule. And Your Honor, I think a response to that is that in last year's Little Sister of the Poor case in the Supreme Court, the Supreme Court said it's completely immaterial what the agency decides to call its rule. What matters is what the rule says and whether what the rule is actually doing. And in this case, even though they've called it a direct final rule, it is in fact a conditional rule. And by the terms that the agency set out, and I note, Your Honor, that we filed our petition in February within 60 days of the effective date, which in our view was when the rule was formally promulgated, the agency did not object to that. So I read that to think that the agency was under the same impression that Ms. Solis did. The agency looked at what it wrote in the federal register and said, you know what? This rule did not become final until December 22nd. And so everybody was proceeding under the same assumption that promulgation was the effective date in this case. And I recognize that that's not typically the case when a rule goes through the formal rulemaking process. But when the agency is going to propose a direct final rule, which is in effect a conditional rule, it does not become final agency action. And it does not consummate. It's not a consummated agency action. If no letter had been filed, no comment had been filed at all. Yes. Oh. It would have remained a direct final rule. So I appreciate that question, Your Honor. So it brings me back to the point that you were asking of my co-counsel. And the comments that are filed are available on regulations. I'm asking you a different question. Right, right. Because time is very late here. We've given you way too much time here. So if no comment at all had been filed, none, not by you, not by any, it would remain a direct final rule. If no comment had been filed, there would be no reason for the public to believe that the rule was valid. The condition wouldn't have been met and it would remain a direct final rule. Correct. Right. And we don't believe that the rule, that you're only securing that right for the commenter. We think when a comment is filed that puts the public on notice on regulations.gov, that this might be pooled pending further agency action. The agency has to review this to see whether or not that the agency deems it to be an adverse comment. The public has been on notice that we're in this tentative stage and we don't know whether the rule is going to become final until it's effective date when the agency has failed to act. I'm not sure I understand your response to Judge Millett's question. I'm sorry. If no one had filed any comment at all, what would have been the effective date? I'm sorry. What would have been the promulgation date of the rule under your theory? Again, it's a different case, but I do think that there's a much stronger argument that could be made that had no comment been filed, that there was constructive notice to the public as of the end of the comment period that there were no adverse comments and the rule would take effect. And then that constructive notice would place the public on notice, obviously, that there was going to be final agency action. And so it's a different situation. Give me a date, please. If no comment had been filed, what would have been the promulgation date that would start the clock ticking for jurisdictional purposes under your construction of everything? Under our construction of everything, I think that December 22nd would remain the promulgation date because there is no way for the public to fully know. And that's why other agencies file a confirmatory notice in the federal register to alert the public that the rule will, in fact, become final as proposed. And that's not the path CPSC took. And I appreciate Your Honor's question. And there could be a stronger argument that if there were no adverse comments filed by anyone, there was no public notice that this might be pulled under that theory. But the way that the rule was published in the federal register, it says this will be deemed published in the federal register as of December 22nd, 2019. So that has to be the final agency action in this state because that's how CPSC structured its rule. And that rule shouldn't be now construed at this later date to impede the rights of the public to file a challenge to that agency action. All right. I think we have your argument. We will take a case under advisement.
judges: Rogers, Millett, Wilkins